IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| FREDDIE L. WALKER, SR., | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 1:11-CV-521 |
| | § | |
| v. | § | |
| | § | |
| WEBCO INDUSTRIES, INC. *et al*, | § | |
| | § | |
| *Defendants*. | § | |

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS AND DEFENDANTS' MOTION TO STRIKE

Plaintiff Freddie L. Walker, Sr. filed this case *pro se* against Defendants Webco Industries, Inc., alleging several causes of action primarily based on the termination of employment with Webco. The case was referred to United States Magistrate Judge Keith Giblin for determination of non-dispositive pretrial matters pursuant to 28 U.S.C. § 636. Defendants filed a motion to dismiss Plaintiff's First Amended Complaint pursuant Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, as well as a motion to strike Plaintiff's untimely-filed Second Amended Complaint and sur-reply brief.

For the reasons discussed below, the court recommends granting in part the motion to strike, to strike Plaintiff's Second Amended Complaint but not his sur-reply brief. The court also recommends granting Defendants' motion to dismiss.

### I. BACKGROUND

A timeline of events is instructive:

| | |
|---|---|
| October 11, 2011 | Plaintiff filed suit against Defendants, asserting several causes of action based on his termination from employment with Webco. |

| | |
|---|---|
| November 14, 2011 | Defendants file a motion to dismiss or, in the alternative, for a more definite statement. |
| November 29, 2011 | Plaintiff filed a "motion for leave to file a motion for extension of time to respond to defendants' motion to dismiss," Doc. # 12, which appeared to request both leave to amend his Complaint and for an extension of time to respond to the motion to dismiss. |
| December 1, 2011 | Plaintiff filed a "motion by plaintiff to amend pleading," Doc. # 13, which requested he be permitted to attach additional pages to the November 29 motion. |
| December 8, 2011 | Plaintiff filed a response to the motion to dismiss, which briefly addressed Defendants' arguments but was primarily dedicated to restating the facts in his petition and re-pleading his claims. Doc. # 16. |
| September 5, 2012 | The undersigned entered an order that denied as moot Defendants' motion to dismiss and gave Plaintiff one opportunity to cure the deficiencies in his Complaint by re-pleading. Doc. # 20. The Order was very clear that Plaintiff had only one opportunity to re-plead, and that failure to re-plead with the required specificity was "likely to result in a recommendation that the plaintiff's claims be dismissed." *Id*. at 20. |
| September 26, 2012 | Plaintiff files his First Amended Complaint. Doc. # 22. This document purports to assert the following claims: (1) breach of contract; (2) bad faith; (3) intentional misrepresentation; (4) negligent misrepresentation; (5) intentional interference with business relations; (6) negligence; (7) race discrimination in violation of 42 U.S.C. § 2000e-2; (8) "discharge in violation of public policy"; (9) intentional infliction of emotional distress; (10) violation of 42 U.S.C. § 1981; (11) retaliation in violation of 42 U.S.C. § 2000e-3; and (12) violation of 42 U.S.C. § 1983. |
| October 15, 2012 | Defendants file a motion to dismiss Plaintiff's First Amended Complaint. Doc.# 23. |
| October 31, 2012 | Plaintiff files a motion for an extension of time to respond to the motion to dismiss. |
| November 8, 2012 | The court grants Plaintiff's motion to extend, and extends the response deadline to November 21, 2012. |

| | |
|---|---|
| November 21, 2012 | Plaintiff files his response to Defendants' motion to dismiss. This is a 25 page document in which he appears to concede that his own Complaint is "hard to understand," Doc. # 26 at 4, and spends little to no time actually addressing the merits of Defendants' motion to dismiss. Instead, Plaintiff seeks a more definite statement of Defendants' defenses and seems to add a number of causes of action including fraud, defamation, respondeat superior, Texas Deceptive Trade Practices Act, and constructive discharge. |
| December 6, 2012 | Defendants file a reply brief. |
| January 16, 2013 | Plaintiff files a document entitled "Plaintiff's More Definite Statement" which appears to be a Second Amended Complaint. Doc. # 29. Plaintiff files another document entitled "Brief in Opposition to Motion to Dismiss" the same day, which appears to be an untimely sur-reply to Defendants' December 6 reply brief which far exceeds the page limitations in the Local Rules. Doc. # 30. |
| February 4, 2013 | Defendants file a motion to strike Plaintiff's January 16 Second Amended Complaint and sur-reply. Doc. # 31. |
| February 12, 2013 | Plaintiff files a response to the motion to strike. His argument is not clear to the court, but it seems to revolve around his assertion that the January 16 document is a more definite statement, not an amended Complaint. |

## II. THE COURT RECOMMENDS GRANTING IN PART DEFENDANTS' MOTION TO STRIKE

Defendants seek to strike both documents Plaintiff filed on January 16, 2013, namely his "More Definite Statement" and his sur-reply to the motion to dismiss.

### A.    The court recommends striking Plaintiff's "More Definite Statement"

1.    <u>Applicable law</u>

Because no Scheduling Order has issued in this case, amendment of the pleadings is governed by the more liberal standard of Federal Rule of Civil Procedure 15. Plaintiff may amend his pleadings in three ways under Rule 15: (1) once as a matter of course within (a) 21 days after

serving it, or (b) 21 days after the earlier of the filing of the responsive pleading by Defendants or the filing of a motion under Rule 12(b), (e), or (f) by Defendants; (2) with Defendants' written consent; or (3) with leave of court, which should be "freely" given "when justice so requires." Rule 15(a)(1), (2).

Generally, a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir.), *cert. denied* 130 S. Ct. 3368 (2010) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). Granting leave to amend is not required, however, if the plaintiff has already pleaded his "best case." *Id*. at 768.

2.    <u>Analysis</u>

Plaintiff cannot amend his pleadings under the first way set out above. As evidenced by the timeline of events in the Background section *supra*, more than 21 days had elapsed from any of the triggering events when Plaintiff filed his "More Definite Statement" on January 16. Defendants clearly have not consented to amendment, so Plaintiff can amend his pleadings only with leave of court.

Even keeping in mind that leave should be freely given and that Plaintiff is proceeding *pro se*, the court would not recommend granting leave to amend. Plaintiff was very specifically told in September 2012 that he would be given one, and only one, opportunity to amend his pleadings. Doc. # 20 at 5. Plaintiff took that opportunity and filed his First Amended Complaint. When Defendants filed their motion to dismiss on October 16, 2012, Plaintiff was granted an extension of his response deadline to November 21, 2012. This response, as will be discussed below, is little more than another

attempt to re-plead his claims. Plaintiff then filed his "More Definite Statement""" on January 16, 2013, without seeking leave of court.[1]

The court does not consider Defendants' motion to strike Plaintiff's untimely amendment in a vacuum. Keeping in mind the sequence of events that preceded Plaintiff's January 16 filing, the court recommends granting the motion to strike. Plaintiff has had every opportunity to present a coherent pleading in this case, and even the fact that he is *pro se* does not entitled him to file amended Complaints—or "More Definite Statements"—whenever the whim strikes him.

## B.    The court does not recommend striking Plaintiff's sur-reply brief

With respect to Plaintiff's January 16 sur-reply brief, the court agrees with Defendants that it violates several Local Rules regarding the timing of sur-replies and the page limitations. However, given Plaintiff's *pro se* status—and the fact that, unlike Plaintiff's pleading requirements, the court has not specifically addressed these requirements in a previous Order—the court will allow the sur-reply brief to stand and consider the arguments therein.

The only exception is that the court will not consider any argument in the sur-reply brief that is essentially a re-pleading of Plaintiff's claims, for the same reasons discussed above with respect to Plaintiff's "More Definite Statement" filing.[2]

---

[1]  While Plaintiff disagrees with Defendants' characterization of this as a Second Amended Complaint, the court does not know what Plaintiff believes that accomplishes: either this is an untimely Second Amended Complaint, or it is a "Brief for More Definite Statement" that is not a pleading requiring consideration by the court. To the extent that Plaintiff would argue that this was a more definite statement filed pursuant to Federal Rule of Civil Procedure 12(e), Rule 12(e) states only that a more definite statement may be requested by the party that must file a responsive pleading. The court ordered Plaintiff to file a more definite statement in September 2012, and Plaintiff responded later than month with the First Amended Complaint. Rule 12(e) goes on to state that "[i]f the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order."

[2]  Nor will the court credit any argument in Plaintiff's response that is a re-pleading, for the same reasons discussed above with respect to Plaintiff's "More Definite Statement" filing.

## III. THE COURT RECOMMENDS GRANTING DEFENDANTS' MOTION TO DISMISS IN ITS ENTIRETY

### A.    Applicable law

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move a court to dismiss an action for "failure to state a claim upon which relief can be granted." When ruling on a Rule 12(b)(6) motion, the court may consider only the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

Once a claim has been adequately stated, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 1969 (2007) *see also Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*). As the Supreme Court recently explained,

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face" . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

Although it is well-established that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers, *Bustos v. Martini Club*, 599 F.3d 458, 461-62 (5th Cir. 2010), the requirement that a complaint present more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," holds true even for *pro se* litigants. *See Thrasher v. Amarillo Police Dep't*, 346 F. App'x 991, 991 (5th Cir. 2009).

**B.     Substance of Plaintiff's First Amended Complaint**

For purposes of this Order, the court will assume that Plaintiff's First Amended Complaint complies with the requirement in Federal Rule of Civil Procedure 8(a) that he submit a "short and plain statement" of his claims. Plaintiff is *pro se* and entitled to some degree of leeway in his pleadings, although he is still required to follow the applicable law in presenting his claims. *See, e.g., Jerry Family of Sark v. Fed. Home Loan Mortgage Corp.*, 161 F. App'x 367 (5th Cir. 2005). As noted above, the court will not consider any portion of Plaintiff's November 21 response to Defendants' motion to dismiss that re-pleads claims; the claims asserted in Plaintiff's September 26 pleading are what will be considered in this Order.

The gravamen of Plaintiff's claims is the following. He was an independent contractor doing business as Walker's Empire Professional Janitorial Service ("WEPJS") when he entered into two agreements in 2004 and 2008 with Defendant Webco Industries, Inc. to provide janitorial services at locations in Orange, Texas. The remainder of the Defendants appear to be individuals employed by Webco.

On June 21, 2011, Plaintiff was terminated by Webco after what Plaintiff terms as false accusations of invoice fraud against him. Plaintiff was 59 years old at the time of the termination, and is African-American. He also alleges racially motivated threats, intimidation, and harassment throughout contractual relationship with Webco, as well as less pay than white counterparts and being denied the ability to discipline white subordinate employees.

**C.   Analysis**

1.    <u>Breach of contract (Claim 1)</u>

Under Texas law, Plaintiff must demonstrate four elements to prevail on a breach of contract claim: (1) that a valid contract exists between the Plaintiff and Defendant; (2) Plaintiff tendered performance or was excused from performing; (3) Defendant's breach of the contract; and (4) damages suffered by Plaintiff as a result of the breach. *See, e.g., West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App. — Houston [14th Dist.] 2008, no pet).

According to Plaintiff's First Amended Complaint, the contract in this case was between Webco and WEPJS. Plaintiff pleads no facts that would allow the court to conclude that any Defendant other than Webco was a party to this contract, meaning that any breach of contract claim fails against any Defendant other than Webco.

Nor is Plaintiff a party to the contract; rather, it was WEPJS. Plaintiff has no breach of contract claim against Webco; rather, WEPJS would, if such a claim were supported by the facts. To the extent that Plaintiff is attempting to pursue his claims on WEPJS's behalf, he cannot: a corporation cannot proceed *pro se* in federal court, even when the person seeking to represent the corporation is its president and/or major stockholder. *K.M.A., Inc. v. Gen'l Motors Acceptance Corp.*, 652 F.3d 398, 399 (5th Cir. 1982). Plaintiff's First Amended Complaint states that WEPJS is a "Texas corporation." Doc. # 22 at 2.

The court therefore recommends dismissal of Plaintiff's breach of contract claim.

2.    <u>Bad faith (Claim 2)</u>

Plaintiff's First Amended Complaint states that his claim for bad faith is based on duties imposed by law on Defendants "in connection with the employment agreement to act fairly and in

good faith toward Plaintiff." Doc. # 22 at ¶ 61.The court has already explained why Plaintiff has no contract with any Defendant (he pleads no facts alleging the existence of a contract he was a party to), why WEPJS has no contract with any Defendant other than Webco (he pleads no facts alleging the existence of a contract between any entities other than WEPJS and Webco), and why Plaintiff cannot maintain an action on behalf of WEPJS (corporations cannot proceed *pro se* in federal court).

Even assuming Plaintiff could maintain an action on behalf of WEPJS for bad faith based on the WEPJS-Webco contract, there is no duty of good faith and fair dealing in the employment context. In Texas, "not every contractual relationship creates a duty of good faith and fair dealing"; rather, this duty arises

> only when there is a special relationship, such as that between an insured and his or her insurance carrier . . . But the elements which make the relationship between an insurer and an insured a special one are absent in the relationship between an employer and its employees . . . [T]here is no duty of good faith and fair dealing in the employment context.

*City of Midland v. O'Bryant*, 18 S.W.3d 209, 215-16 (Tex. 2000).

The court therefore recommends dismissal of Plaintiff's bad faith claim.

3.      Intentional misrepresentation (Claim 3)

With respect to this claim, Plaintiff alleges only that between April 2008 and June 2011, two of the individual Defendants (Jordan and Brewer) promised Plaintiff that his employment would be secure so long as his performance was satisfactory, that he would not be terminated absent good cause, and that termination of an employment after the first 90 days would be based on just and reasonable cause. Plaintiff states that he was unaware of Defendants' intent not to perform their promise, acting in justifiable reliance on Defendants' promises by remaining employed by Webco and not seeking employment elsewhere.

9

Intentional misrepresentation is a fraud claim, and has four elements: (1) Defendants made a material representation that was false; (2) Defendants knew the representation was false, or made it recklessly as a positive assertion without any knowledge of the representation's truth; (3) Defendants intended to induce Plaintiff to act upon the representation; and (4) Plaintiff actually and justifiably relied upon the representation, thereby suffering injury. *Ernst & Young, L.L.P. v. Pacific Mutual Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). Because this is a fraud claim, it is subject to the higher pleading standards in Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that Plaintiff: "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

The statements Plaintiff alleges were made by employees of Webco to Plaintiff about WEPJS's continued employment, not Plaintiff's continued employment. WEPJS was the entity employed by Webco pursuant to the employment contracts, *not* Plaintiff. Plaintiff is, again, attempting to assert a claim on behalf of Webco, and he cannot do so because a corporation cannot proceed *pro se* in federal court.

Even if Plaintiff could pursue this claim, his pleadings are insufficient to state a claim. Plaintiff does little more than recite the elements of an intentional misrepresentation claim, and the facts as he presents them do not support his claim. The statements he cites regarding termination are actually true statements: they are set out in the WEPJS-Webco employment contracts as the grounds for continued employment or termination. The statements themselves are not false; rather, what Plaintiff alleges to be false is  the cited reason for his termination.

The court recommends dismissal of Plaintiff's intentional misrepresentation claim.

4.    Negligent misrepresentation (Claim 4)

Plaintiff's allegations of negligent misrepresentation are similar to his allegations for intentional misrepresentation: he alleges that Defendants Jordan and Brewer told him at some unknown time that he was performing his duties in a manner which Webco considered to be satisfactory, and that his job would remain secure if he continued to perform his duties in the same manner. Webco later professed that Plaintiff's job performance was unsatisfactory, so Plaintiff alleges that the earlier statements were false. Plaintiff acted in justifiable reliance on these representations, forbearing other employment and continuing to perform his job duties at Webco.

Plaintiff must demonstrate five elements on a negligent misrepresentation claim: (1) Defendants made a representation to Plaintiff in the course of Defendant's business; (2) Defendants supplied false information for the guidance of others; (3) Defendants did not exercise reasonable care or competence in obtaining or communicating the information; (4) Plaintiff justifiably relied on the representation; and (5) Defendant's misrepresentation proximately caused Plaintiff's injury. *McCamish, Martin, Brown, Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999). The sort of "false information" mentioned in element two is a "misstatement of existing fact" rather than a promise to do something or refrain from doing something in the future. *See, e.g., Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App. – Houston [14 th Dist.] 1999, pet. denied).

As before, the statements Plaintiff alleges were made by employees of Webco to Plaintiff about WEPJS's continued employment, not Plaintiff's continued employment. WEPJS was the entity employed by Webco pursuant to the employment contracts, *not* Plaintiff. Plaintiff is, again, attempting to assert a claim on behalf of Webco, and he cannot do so because a corporation cannot proceed *pro se* in federal court.

Even if Plaintiff could pursue this claim, his pleadings are insufficient to state a claim. The second statement Jordan and Brewer made cannot be actionable, because it involves a future promise (i.e., his job would remain secure if he continued to perform his duties satisfactorily in the future). With respect to the first statement, Plaintiff provides no context for this statement or no time frame in which it was made, nor does he provide context or a time frame for Webco's later dissatisfaction with his work. The mere fact that Jordan and Brewer considered WEPJS's performance to be satisfactory at some unknown point in the past and Webco later considered WEPJS's performance to be unsatisfactory does not make the early statements false.

The court recommends dismissal of Plaintiff's negligent misrepresentation claim.

5. <u>Intentional interference with business relations (Claim 5)</u>

With respect to this claim, Plaintiff alleges that some of the individual Defendants "intentionally interfered with the contractual and employment relationship between plaintiff and Defendants Webco by their intentional acts designed to caused plaintiff discharge in breach of his employment contract and the disruption of his employment relationship." Absolutely no explanation of what the individual Defendants' "intentional acts" might be is provided.

To prevail on an intentional interference with existing business relations claim, Plaintiff must demonstrate: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damage or loss." *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

> [F]or many purposes, an agent and a principal are treated as one, and one cannot interfere with one's own contract . . . Consequently . . .to hold an agent liable . . .the plaintiff had to show

that the agent acted so contrary to the principal's best interest that his actions could only have been motivated by personal interests.

*Id*. at 77, 79.

Because the contract at issue was between WEPJS and Webco, Plaintiff is again attempting to assert a claim *pro se* on behalf of a corporation in federal court. This is not permitted.

Even if Plaintiff could pursue this claim, he has not alleged facts that state a claim. The individual Defendants are Webco employees and agents; therefore, Plaintiff would have to demonstrate that they acted so contrary to Webco's best interests that their actions could only have been motivated by personal interests. Plaintiff does not even explain what the mysterious "intentional acts designed to cause plaintiff discharge in breach of his employment contract and the disruption of his employment relationship" are, much less provide any facts that would demonstrate the individual Defendants acted contrary to Webco's best interests.

The court recommends dismissal of Plaintiff's intentional interference with business relations claim.

6.      Negligence (Claim 6)

Generously construed, Plaintiff alleges that the individual Defendants owed Plaintiff a duty not to perform their supervisory responsibilities toward him negligently, and that Webco owed Plaintiff a duty not to negligently hire or retain supervisors that would improperly supervise Plaintiff, and not a duty not to negligently terminate him or allow him to be negligently terminated.

The elements of a negligence claim are: (1) the existence of a legal duty; (2) breach of that duty; and (3) damages proximately caused by the breach. *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013).

Because the employment at issue was between WEPJS, pursuant to the terms of the WEPJS-Webco contracts, Plaintiff is again attempting to assert a claim *pro se* on behalf of a corporation in federal court. This is not permitted.

Even if Plaintiff could pursue this claim, he has not alleged facts that state a claim. The court has not found any case that would impose a duty on supervisors or employers to not perform their supervisory responsibilities negligently, not to hire or retain supervisors that improperly supervise Plaintiff, or not to negligently terminate Plaintiff. Certainly no duty exists in the at-will employment context, *see, e.g., Texas Farm Bureau Mutual Insurance Cos. v. Sears*, 84 S.W.3d 604, 607-08 (Tex. 2002), and absent a special contractual relationship—which Plaintiff has not alleged[3]—the court cannot see any basis for the existence of one where there is an employment contract between the parties.[4] The employment contract itself certainly does not state that such a duty exists, and the court explained *supra* why Plaintiff is not owed a duty of good faith and fair dealing under the employment contract.

The court recommends dismissal of Plaintiff's negligence claim.

---

[3] Plaintiff does state that he is owed this duty in part because he was "placed in a manifestly vulnerable position." Doc. # 22 at ¶ 95. The court does not know what this is referring to, and no explanation is provided. To the extent Plaintiff would assert he was vulnerable because he was or could be terminated, that does not create a special relationship.

[4] *Cf Strickland v. Joeris*, 2012 WL 6013423 at *7 (Tex. App. — San Antonio Nov. 30, 2012, no pet.) (rejecting Plaintiff's claim that Defendant owed him a duty not to get him fired and stating that "In the absence of a special relationship or where such duty is implicitly undertaken, there is ordinarily no duty of reasonable care owed to protect against purely economic loss, and thus liability is generally not imposed for negligent interference with contract. D. Dobbs, The Law of Torts § 452, at 1282–83 (2001). No Texas court has recognized such a duty and we decline to do so here.").

7.    Racial discrimination under 42 U.S.C. § 2000e-2 (Claim 7)

Plaintiff's next claim is essentially that he was discriminated against on account of his race. Title VII makes it unlawful for "an employer . . .to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Defendants argue that Plaintiff was not an employee covered under Title VII, but rather an independent contractor not covered under Title VII. In determining whether an individual is an employee or an independent contractor, the court applies the economic realities/common law control test and considers the following factors:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer;" (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

As the court has pointed out before, Plaintiff was not terminated; WEPJS was. Plaintiff cannot pursue claims in WEPJS's stead without counsel because a corporation cannot appear *pro se* in federal court.

Even if Plaintiff could pursue this claim, he cannot demonstrate an essential element: that Webco was his employer. In this case, Plaintiff actually calls WEPJS an "independent contractor." Doc. # 22 at ¶¶ 5, 7. He states that he performed services for Webco pursuant to a contract, and submitted invoices for payment monthly. *Id.* at ¶¶ 7, 18. WEPJS provided all the materials and

supplies necessary for work under the contract. *Id.* at ¶ 21. Under the terms of the most recent contract, which was submitted as an attachment to Plaintiff's original Complaint, WEPJS: (1) WEPJS would furnish employees and pay all of their applicable taxes; (2) WEPJS billed monthly; and (3) WEPJS carried liability insurance. Doc. # 1-4 at 1.

Based on Plaintiff's own pleadings, WEPJS was an independent contractor. To the extent Plaintiff was an employee of anyone, he was an employee of WEPJS and WEPJS was an independent contractor doing business with Webco. Neither Plaintiff nor WEPJS was an employee of Webco. As such, he cannot maintain a Title VII case against Webco.

The court recommends dismissal of Plaintiff's Title VII claim.

8. <u>Discharge in violation of public policy (Claim 8) and 42 U.S.C. § 1981 (Claim 10)</u>

Plaintiff's eighth and tenth claims both seem to be under 42 U.S.C. § 1981 and allege a race-based failure to promote, denial of benefits, and termination. Claim 8 simply states that Defendants discriminated and terminated Plaintiff based on his race. Claim 10 alleges that Defendants denied benefits by "refusing to send blacks to National Conference Training with the whites," "failing to provide unrestricted access to facilities unrestricted to whites," "failing to provide secure lockers," "failing to investigate incidents," "failing to consider plaintiff for promotion," and "failing to provide to plaintiff leadership and other training." Doc. # 22 at ¶ 22.

Section 1981 states that all persons "shall have the same right in every State and Territory to make and enforce contracts . . . The term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." To establish a claim under Section 1981, Plaintiff must allege three elements: (1) that he is a member of a racial minority; (2) an intent by

Defendants to discriminate on the basis of race; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *McNulty v. J.C. Penney Co.*, 305 F. App'x 212, 217 (5th Cir. 2008). Here, Plaintiff has alleged only discrimination based on the right enumerated in the statute to make and enforce contracts.

As the court has pointed out before, the only contract in this case was between WEPJS and Webco. Plaintiff was not a party to this contract, and Plaintiff cannot pursue claims in WEPJS's stead without counsel because a corporation cannot appear *pro se* in federal court.

Even assuming Plaintiff could pursue his claims, many of his allegations do not make sense, much less plead an intent by Defendants to discriminate based on race. It is unclear how Plaintiff, as an employee of an independent contractor, could have been promoted, why he would be sent to National Conference Training, or why he would be provided leadership or training. His allegation about "failing to investigate incidents" contains no allegation that this failure had anything to do with race. Nor do any of the incidents alleged appear to be tied to making or enforcing contracts.

Plaintiff may believe that Defendants discriminate based on race, but he has not alleged sufficient facts that would permit the court to conclude that he has stated a Section 1981 claim. The court recommends dismissal of Plaintiff's Section 1981 claims.

9.   Intentional infliction of emotional distress (Claim 9)

Plaintiff next alleges that his termination, and the manner in which it was achieved (the court assumes Plaintiff refers to the supposedly false accusations of invoice fraud), constitute intentional infliction of emotional distress ("IIED"). Plaintiff states that as a result of his termination, he was deprived of income, a sense of self-worth, and security.

To prevail on a claim of IIED, Plaintiff must demonstrate that: (1) Defendants acted intentionally or recklessly; (2) Defendants' conduct was extreme and outrageous; (3) Defendants' actions caused Plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Tiller v. McClure*, 121 S.W.3d 709, 713 (Tex. 2003). "Extreme and outrageous" conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).

As the court has pointed out before, Plaintiff was not terminated; WEPJS was. Plaintiff cannot pursue claims in WEPJS's stead without counsel because a corporation cannot appear *pro se* in federal court.

Even if Plaintiff could assert this claim, the conduct described in the First Amended Complaint both falls far short of the conduct required in an IIED claim and is inappropriate where the conduct complained of is theoretically redressable under other causes of action. *See, e.g., Vaughn v. Drennon*, 372 S.W.3d 726, 732 (Tex. App. — Tyler 2012, no pet.) ("Furthermore, intentional infliction of emotional distress is a "gap-filler" tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress . . .Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available.").

The court recommends dismissal of Plaintiff's IIED claim.

10. <u>Retaliation in violation of Title VII (Claim 11)</u>

As with racial discrimination under Title VII, retaliation requires that Defendants be Plaintiff's employer. 42 U.S.C. § 2000e-3(a). The court explained at length *supra* why Plaintiff cannot purse claims on behalf of WEPJS *pro se*, and why an independent contractor like WEPJS is not entitled to protection under Title VII. The court therefore recommends dismissal of Plaintiff's Title VII retaliation claim.

11. <u>42 U.S.C. § 1983 (Claim 12)</u>

Plaintiff's twelfth and final cause of action is under 42 U.S.C. § 1983, and alleges additional facts to support the claim under the heading "Policy and/or Custom." He essentially alleges that Webco, which he states is an Oklahoma corporation, has an official policy and/or custom of content discrimination under the First Amendment and that this kept Plaintiff from discussing his complaints of racial discrimination.

To prevail on any claim under Section 1983, one of the essential elements is that Defendants acted "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . ." Section 1983; *see also Richard v. Hoechst Celanese Chem. Group*, 355 F.3d 345, 352 (5th Cir. 2003). This elements "excludes from its reach merely private conduct, no matter how discriminatory or wrongful . . . A plaintiff must show that the party charged with depriving the plaintiff of her federal right is an entity that can be fairly described as a state actor." *Richard*, 355 F.3d at 352 (internal quotation omitted). A private entity can fairly be described as a state actor under several tests: the public function test, the state compulsion/coercion test, or the nexus/state action test. *Id.*

As the court has pointed out before, Plaintiff was not terminated; WEPJS was. Plaintiff cannot pursue claims in WEPJS's stead based on without counsel because a corporation cannot appear *pro se* in federal court.

Plaintiff alleges no facts that would allow the court to conclude that any of the Defendants is a state actor. Webco is an Oklahoma corporation, and is not alleged to perform any function exclusively reserved for the state (public function test), coerced by the state (state compulsion/coercion test), or be a joint participant with the state (nexus/state action test). The individual Defendants all appear to be employees of Webco, and there is no allegation that any of them are state actors.

In the absence of state action, a Section 1983 claim cannot survive. The court recommends dismissal of Plaintiff's Section 1983 claim.

**D.    Conclusion**

The court therefore recommends granting Defendants' motion to dismiss in its entirety and dismissing all of Plaintiff's claims.

## IV. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), all parties are entitled to serve and file written objections to the report and recommendation of the magistrate judge within fourteen (14) days of service. Failure to file specific, written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report shall bar an aggrieved party from *de novo* review by the District Judge of the proposed findings, conclusions and recommendations, and from appellate review of factual findings and legal conclusions accepted by the District Court except on grounds of

plain error. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Serv. Auto. Ass'n.,* 79

F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C. § 636(b)(1).

**SIGNED this the 29th day of April, 2013.**

KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE